Richard Leigh EDWARDS, Petitioner,

v.

Derrick L. OLLISON, Warden, Respondent.

No. CV 06–5084–SJO (PLA).

United States District Court, C.D. California, Western Division.

Dec. 8, 2008.

Richard Leigh Edwards, Blythe, CA, pro se.

Alene M. Games, CAAG–Office of Attorney General of California, Los Angeles, CA, for Respondent.

## ORDER ADOPTING MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

S. JAMES OTERO, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the entire file de novo, including the magistrate judge's final report and recommendation filed herein and petitioner's objections and supplemental objections. The Court agrees with the recommendations of the magistrate judge.

ACCORDINGLY, IT IS ORDERED:

1. The final report and recommendation is adopted.

2. Judgment shall be entered consistent with this order.

3. The clerk shall serve this order and the judgment on all counsel or parties of record.

## FINAL REPORT AND RECOMMENDATION [1] OF UNITED STATES MAGISTRATE JUDGE

PAUL L. ABRAMS, United States Magistrate Judge.

The Court submits this Final Report and Recommendation to the Honorable S. James Otero, United States District Judge, pursuant to 28 U.S.C. Section 636 and General Order 194 of the United States District Court for the Central District of California. For the reasons set

---

**1.** This Final Report and Recommendation ("R & R") contains a minor correction on page 10 regarding petitioner's commitment offense, possession of methamphetamine (California Health & Safety Code § 11377(a)). Although the original R & R described the offense as a felony in California, it is in fact a "wobbler" offense, meaning that it can be charged as either a felony or a misdemeanor. In petitioner's case, he was charged with felony possession. *See Ferreira v. Ashcroft*, 382 F.3d 1045, 1051 (9th Cir.2004) (a "wobbler" can be punished as either a misdemeanor or a felony). This correction does not alter the Court's determination concerning any of petitioner's grounds for relief.

forth below, the Magistrate Judge recommends that the Petition for Writ of Habeas Corpus be dismissed with prejudice.

# I.

## SUMMARY OF PROCEEDINGS

Following a bench trial in the Santa Barbara County Superior Court, petitioner was convicted of possession of methamphetamine (Cal. Health & Safety Code § 11377(a)). The trial court also found that petitioner suffered four prior "strike" convictions for robbery, and that he had served five prior prison terms.[2] (Lodgment No. 3 at 1, 3). Petitioner received a sentence of thirty years to life in state prison. (Lodgment No. 1; Lodgment No. 3 at 1).

On appeal, the California Court of Appeal affirmed the conviction. (*See* Lodgment No. 3). Petitioner subsequently filed a petition for review, which the California Supreme Court denied on May 12, 2004, 2004 WL 396887. (*See* Lodgment Nos. 4, 5).

Petitioner filed a habeas petition in the Santa Barbara County Superior Court, which was rejected on February 17, 2005. (*See* Lodgment Nos. 6, 7). Petitioner filed a habeas petition in the California Court of Appeal, which was denied on June 1, 2005. (Lodgment Nos. 8, 9). Petitioner filed a habeas petition in the California Supreme Court, which was denied on June 28, 2006. (Lodgment Nos. 10, 11).

On August 14, 2006, petitioner filed the instant Petition. Respondent filed an Answer and Return on January 30, 2007. Petitioner filed a Traverse on April 3, 2007.

This matter has been taken under submission, and is now ready for decision.

# II.

## STATEMENT OF FACTS

As petitioner is not challenging the sufficiency of the evidence to support his conviction, the Court adopts the statement of facts contained in the California Court of Appeal's opinion affirming petitioner's judgment of conviction.

At trial, Santa Barbara Police Department Officer Matthew Barrall testified that on December 22, 2001, he was dispatched to a check cashing business on State Street in Santa Barbara. He met Sergeant Fryslie outside the location and they both went inside and contacted [petitioner]. Officer Barrall informed [petitioner] they were there "concerning the check that he was attempting to cash."

After asking [petitioner] for identification, Officer Barrall obtained [petitioner's] driver's license, ran it through dispatch, and learned that [petitioner] was on parole and had a no-bail parole warrant. Officer Barrall asked [petitioner] if he had any weapons on him and [petitioner] replied that he had a large folding knife. The officer retrieved the knife and asked [petitioner] if he had any other weapons on his person. [Petitioner] said he did not and he gave the officer permission to pat him down for weapons and to look inside his pockets. Officer Barrall retrieved a wallet from [petitioner's] pocket and, in his right front coin pocket, found a small vial that appeared to contain crystal metham-

---

2. Under California's Three Strikes statute, a court must sentence a defendant with two or more prior "strikes"—that is, certain felony convictions—who is convicted of a new felony to no less than 25 years to life. Cal. Pen. Code § 667(e)(2)(A). Only "serious" felonies (*see* Cal. Pen. Code § 1192.7(c)) or "violent" felonies (*see* Cal. Pen. Code § 667.5(c)) count as prior strikes. *See* Cal. Pen. Code § 667(d)(1).

phetamine. The officer asked [petitioner] what it was. [Petitioner] said it was "cut" and claimed it was "a legal energy booster that he bought from a head shop in Ventura." Officer Barrall arrested [petitioner]. Later, at the station, [petitioner] admitted he had used drugs. Susan Silvia, a criminalist employed by the California Department of Justice, examined the contents of the vial and determined it contained 0.88 grams of methamphetamine.

(Lodgment No. 3 at 2–3).

## III.

### PETITIONER'S CONTENTIONS

1. Petitioner's sentence of thirty years to life constitutes cruel and unusual punishment. (Petition at 1–21).

2. Petitioner received ineffective assistance of appellate counsel because counsel failed to argue that California's Three Strikes law denied petitioner equal protection. (Petition at 23–38).

3. Petitioner received ineffective assistance of appellate counsel because counsel failed to argue that the use of petitioner's prior convictions to increase his sentence violated the Ex Post Facto Clause. (Petition at 39–47).

4. Petitioner received ineffective assistance of appellate counsel because counsel failed to argue that the use of petitioner's prior convictions to increase his sentence violated the Double Jeopardy Clause. (Petition at 48–56).

5. The cumulative errors of appellate counsel violated petitioner's constitutional rights. (Petition at 57–59).

6. Petitioner received ineffective assistance of trial counsel because counsel failed to file a Motion for Deferred Entry of Judgment under California Penal Code § 1000(a). (Petition at 60–75).

7. California Penal Code § 1000(a) violates the Equal Protection Clause. (Petition at 76–84).

8. The sentencing court abused its discretion in failing to strike the prior convictions. (Petition at 85–95).

## IV.

### STANDARD OF REVIEW

The Petition was filed after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"). Pub. L. No. 104–132, 110 Stat. 1214 (1996). Therefore, the Court applies the AEDPA in its review of this action. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Under the AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a person in state custody "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As explained by the Supreme Court, section 2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In *Williams,* the Court held that:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a

question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams,* 529 U.S. at 412–13, 120 S.Ct. 1495; *see Weighall v. Middle,* 215 F.3d 1058, 1061–62 (9th Cir.2000) (discussing *Williams* ). A federal court making the "unreasonable application" inquiry asks "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. 1495; *Weighall,* 215 F.3d at 1062. The Court explained that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams,* 529 U.S. at 411, 120 S.Ct. 1495; *accord: Lockyer v. Andrade,* 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003). Section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings," *Lindh,* 521 U.S. at 333 n. 7, 117 S.Ct. 2059, and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti,* 537 U.S. 19, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (per curiam). A federal court may not "substitut[e] its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d)." *Id.*; *Early v. Packer,* 537 U.S. 3, 123 S.Ct. 362, 366, 154 L.Ed.2d 263 (2002) (per curiam) (holding that habeas relief is not proper where state court decision was only "merely erroneous").

The only definitive source of clearly established federal law under the AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams,* 529 U.S. at 412, 120 S.Ct. 1495. While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law (*Duhaime v. Ducharme,* 200 F.3d 597, 600–01 (9th Cir. 1999)), only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied. *Williams,* 529 U.S. at 412, 120 S.Ct. 1495; *Clark v. Murphy,* 331 F.3d 1062, 1069 (9th Cir.), *cert. denied,* 540 U.S. 968, 124 S.Ct. 446, 157 L.Ed.2d 313 (2003). Furthermore, under 28 U.S.C. § 2254(e)(1), factual determinations by a state court "shall be presumed to be correct" unless the petitioner rebuts the presumption "by clear and convincing evidence."

The United States Supreme Court has held that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Here, the California Court of Appeal issued a reasoned opinion rejecting the claims that are raised in the instant Petition as Grounds One and Eight. Petitioner presented these claims in his petition for review, which the California Supreme Court denied without comment or citation to authority. Accordingly, with respect to Grounds One and Eight, the Court reviews the appellate court's opinion under the AEDPA standards. *See Ylst,* 501 U.S. at 803, 111 S.Ct. 2590; *Shackleford v. Hubbard,* 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (district court "look[s] through" unexplained California Supreme Court decision to the last reasoned decision as the basis for the state court's judgment).

Petitioner presented Ground Six in his habeas petitions filed in the Santa Barbara County Superior Court, California Court of Appeal, and California Supreme Court. The superior court was the only court to issue a reasoned decision rejecting the claim. Accordingly, for Ground Six, the Court reviews the superior court's opinion under the AEDPA standards.

As for Grounds Two, Three, Four, Five, and Seven, petitioner presented these claims in his habeas petition filed in the California Supreme Court. Because the California Supreme Court issued a summary denial, this Court must perform an independent review of the record to determine if the state court's rejection was contrary to, or an unreasonable application of, United States Supreme Court precedent. *See Delgado v. Lewis,* 223 F.3d 976, 981–82 (9th Cir.2000).

## V.

### *DISCUSSION*

### GROUND ONE: PETITIONER'S SENTENCE OF THIRTY YEARS TO LIFE CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT.

■ In Ground One, petitioner argues that his sentence of thirty years to life under the "Three Strikes" statute violates the Eighth Amendment's proscription against cruel and unusual punishment. (Petition Memorandum ("Mem.") at 1–22). On direct appeal, the California Court of Appeal rejected petitioner's Eighth Amendment challenge, finding that, given petitioner's lengthy history of recidivism, his "Three Strikes" sentence was not disproportionate to his current offense. (Lodgment No. 3 at 8–9). For the reasons explained below, the Court concludes that

the state court's determination was not contrary to, or an unreasonable application of, Supreme Court precedent.

For purposes of federal habeas review, it is "clearly established" law that "[a] gross disproportionality principle is applicable to sentences for terms of years." *Andrade,* 538 U.S. at 72, 123 S.Ct. 1166. The principle "does not require strict proportionality between crime and sentence" but "[r]ather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan,* 501 U.S. 957, 993, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring).[3] Successful challenges based on proportionality, however, are "exceedingly rare." *Solem v. Helm,* 463 U.S. 277, 289–90, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *see also Andrade,* 538 U.S. at 73, 123 S.Ct. 1166 (the "precise contours" of proportionality principle "are unclear, applicable only in the 'exceedingly rare' and 'extreme' case") (citation omitted).

In *Andrade,* and its companion case *Ewing v. California,* 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (plurality opinion), the Supreme Court considered and rejected Eighth Amendment claims concerning California's "Three Strikes" law. The *Andrade* petitioner had received a sentence of 50 years to life for his current offenses of two counts of petty theft, where the value of the stolen property totaled around $150. Due to a prior misdemeanor petty theft conviction, however, both petty thefts were charged as felonies. Andrade had an extensive criminal history dating back 13 years, which included three residential burglary convictions (which had been charged as prior "strikes"), as well as convictions for misdemeanor theft, trans-

---

**3.** Justice Kennedy's concurring opinion, which was joined by Justices O'Connor and Souter, is considered controlling. *See United* *States v. Bland,* 961 F.2d 123, 128–29 (9th Cir.1992).

portation of marijuana (two times), and petty theft. In rejecting petitioner's cruel and unusual punishment claim, the California Court of Appeal had concluded that the 50 years to life sentence was not disproportionate. The Supreme Court held that the California Court of Appeal's decision was neither contrary to nor involved an unreasonable application of the clearly established gross disproportionality principle. *See Andrade,* 538 U.S. at 66–76, 123 S.Ct. 1166.

In *Ewing,* the Supreme Court upheld a "Three Strikes" sentence of twenty-five years to life. The *Ewing* defendant was convicted in the instant offense of stealing three golf clubs priced at a total of $1,197, and had a criminal history that included numerous misdemeanor and felony convictions (including three residential burglary convictions and one robbery conviction that had been charged as prior "strikes") for which he had served nine separate terms of incarceration, with most of his crimes being committed while on probation or parole. *Ewing,* 538 U.S. at 17–19, 30, 123 S.Ct. 1179. In affirming Ewing's sentence, the Supreme Court stated that it did not "sit as a 'superlegislature' to second-guess [California's sentencing scheme]. It is enough that the State of California has a reasonable basis for believing that dramatically enhanced sentences for habitual felons 'advance[s] the goals of [its] criminal justice system in any substantial way.'" (Citation omitted). *Ewing,* 538 U.S. at 29–30, 123 S.Ct. 1179 (alterations in original) (citing *Solem,* 463 U.S. at 297 n. 22, 103 S.Ct. 3001). The *Ewing* Court explained:

> Ewing's sentence is justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by his own long, serious criminal record.... To be sure, Ewing's sentence is a long one. But it reflects a rational legislative judgment,

entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated. The State of California "was entitled to place upon [Ewing] the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State." Ewing's is not "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."

*Ewing,* 538 U.S. at 29–30, 123 S.Ct. 1179 (footnote and citations omitted).

Subsequent to *Ewing* and *Andrade,* the Ninth Circuit decided *Ramirez v. Castro,* 365 F.3d 755 (9th Cir.2004), and *Reyes v. Brown,* 399 F.3d 964 (9th Cir.2005), *cert. denied, Ornoski v. Reyes,* 547 U.S. 1218, 126 S.Ct. 2887, 165 L.Ed.2d 938 (2006). In *Ramirez,* the Ninth Circuit held that a sentence of 25 years to life was grossly disproportionate to the crime committed where the current offense was petty theft with a prior theft-related conviction and the two prior "strike" convictions were for second degree robbery. The *Ramirez* court found that this was one of the "extremely rare" cases that gave rise to an inference of gross disproportionality because Ramirez's present offense was a "wobbler" felony for the nonviolent shoplifting of a $199 VCR and Ramirez's two prior strikes arose from one guilty plea for which he received a sentence of one year in county jail and three years probation. *See id.* at 768–70. Noting that all three of Ramirez's convictions were for nonviolent crimes, the Ninth Circuit found that Ramirez's "criminal history" "pales in comparison to the lengthy recidivist histories" in *Ewing* and *Andrade,* and that, unlike any of these recidivists, "Ramirez had never been sentenced to nor served any time

in state prison prior to committing the instant petty theft." *Id.* at 768–69.

In *Reyes,* the Ninth Circuit found that Reyes' sentence of twenty-six years to life for felony perjury for falsifying a driver's license application (which could have been charged under the California Vehicle Code as a misdemeanor) and his criminal history of residential burglary as a juvenile and armed robbery (which were charged as prior "strikes"), along with other convictions for petty theft, being under the influence of a controlled substance, misdemeanor DUI, and misdemeanor battery, might raise an inference of gross disproportionality. The Ninth Circuit considered the facts of each of Reyes' prior convictions in order to "determine whether the offense was a 'crime against a person' or involved violence." *Id.* at 969. Because the record did not indicate whether Reyes' conviction for armed robbery, for which he served five years in prison, involved the use of a weapon or whether he only "had a knife" on his person, the Ninth Circuit remanded the case for further development of the record to determine "the true weight of the offense." *Id.* at 969–70.

In between *Ramirez* and *Reyes,* the Ninth Circuit decided *Rios v. Garcia,* 390 F.3d 1082 (9th Cir.2004), *cert. denied, Rios v. Ryan,* 546 U.S. 827, 126 S.Ct. 37, 163 L.Ed.2d 74 (2005), in which it upheld the petitioner's sentence under the "Three Strikes" law. In the instant offense, Rios shoplifted merchandise from K–Mart valued at $79.88, was chased by a loss prevention officer and was apprehended in the store parking lot after a minor struggle. He also had two prior convictions for robbery, which were eligible as "strikes." Rios was convicted of petty theft with a prior theft-related conviction and second degree commercial burglary, and was sentenced to twenty-five years to life. *Id.* at 1083. In upholding the sentence, the *Rios*

court stated that "*Ewing* and *Andrade* compel the conclusion that Rios's sentence was not grossly disproportionate to his crime in light of his criminal history." *Rios,* 390 F.3d at 1086. The Ninth Circuit compared the sentence in *Andrade,* which was fifty years to life, with that of Rios, and found that Rios' situation presented "a less compelling case for relief" because Rios would be eligible for parole in twenty-five years. The Ninth Circuit also distinguished its decision in *Ramirez* on the basis that unlike the defendant in *Ramirez,* Rios struggled with the loss prevention officer in trying to avoid apprehension, Rios' prior "strikes" involved the threat of violence, he had a lengthy criminal history beginning in 1982, and he had been incarcerated several times. *Id.*; *see also Nunes v. Ramirez–Palmer,* 485 F.3d 432, 435, 439 (9th Cir.), *cert. denied,* —— U.S. ——, 128 S.Ct. 404, 169 L.Ed.2d 283 (2007) (sentence of 25 years to life for petty theft with a prior for stealing $114.40 worth of tools from a Home Depot does "not offend the Constitution").

Here, in assessing the gravity of petitioner's offense, the Court notes that the "triggering" offenses in *Andrade* and *Ewing* involved property crimes. *See Andrade,* 538 U.S. at 66, 123 S.Ct. 1166 (petty theft of $153.54 worth of videotapes from retail store); *Ewing,* 538 U.S. at 17–18, 123 S.Ct. 1179 (grand theft for shoplifting three golf clubs worth $399 each). Petitioner's "triggering" offense involved possession of methamphetamine. Given that the possession offense could have been charged as either a felony or misdemeanor, and that a petty theft offense such as the one in *Andrade* is a felony only when the culprit has a prior conviction, the Court finds that petitioner's commitment offense can be considered at least as serious as the property crimes involved in *Ewing* and *Andrade. See Taylor v. Lewis,* 460 F.3d 1093, 1099 (9th Cir.2006) (in as-

sessing the severity of the petitioner's "triggering" offense of possession of 36 milligrams of cocaine base, the Ninth Circuit noted that California is entitled to the view that "[p]ossession, use, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population' ").

Next, in assessing the severity of petitioner's sentence, the Court also considers petitioner's history of criminal conduct. *See Ewing,* 123 S.Ct. at 1189–90. According to petitioner's pre-sentence report, as a juvenile petitioner was committed to the California Youth Authority in 1973 for kidnapping, robbery, and vehicle theft. He was paroled in 1975, violated parole in 1976, and returned to custody in 1978. (Petition, Exhibit ("Exh.") B at 154–56). Petitioner's adult criminal history is extensive and includes the following offenses: (1) a 1975 misdemeanor conviction for disturbing the peace; (2) a 1978 misdemeanor conviction for receiving stolen property, for which he received a 30–day jail sentence and probation; (3) a 1981 felony conviction for forging a prescription, for which he violated a probation grant and was sentenced to state prison; (4) a 1981 felony conviction for unlawful driving or taking of a vehicle, for which he was sentenced to state prison and after which he violated parole and was returned to custody; (5) a 1982 felony conviction for unlawful driving or taking of a vehicle, for which he received a one-year county jail sentence; (6) a 1983 felony conviction for receiving stolen property, for which he was sentenced to state prison for two years; (7) a 1985 felony conviction for receiving stolen property, for which he received a two-year state prison sentence and violated parole several times; (8) misdemeanor convictions in 1987 and 1989 for being under the influence of a controlled substance; (9) a 1990 felony conviction for first degree robbery with use of a firearm,

for which he was sentenced to state prison for seven years; and (10) felony convictions in 1995 for three counts of first degree robbery with use of a firearm, for which he received a twelve-year state prison sentence and violated parole. (*Id.* at 157–59).

In light of petitioner's substantial criminal history coupled with the current felony conviction, the Court concludes that this is not one of those "exceedingly rare" situations warranting habeas relief. *Andrade,* 538 U.S. at 73, 123 S.Ct. 1166. The Court notes that in *Andrade,* the defendant's criminal background involved numerous first degree robbery convictions that involved the use of a firearm as well as convictions for misdemeanor theft, transportation of marijuana, and petty theft, while the current offenses were for two petty thefts. Petitioner's criminal background is similar to that of Andrade. Considering that the Supreme Court upheld Andrade's fifty year sentence, this Court, while finding petitioner's sentence of thirty years to life severe indeed, cannot conclude that it raises an inference of disproportionality—especially in light of other Supreme Court precedent affirming sentences of greater length in cases where the defendants had comparatively less serious criminal histories and/or non-violent current convictions. *See, e.g., Harmelin,* 501 U.S. at 986–87, 111 S.Ct. 2680 (mandatory life sentence for first drug offense not disproportionate); *Hutto v. Davis,* 454 U.S. 370, 370–71, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (rejecting challenge to a 40–year sentence for possession of less than nine ounces of marijuana); *Rummel v. Estelle,* 445 U.S. 263, 265–66, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (life sentence upheld where priors consisted of fraudulent use of a credit card to obtain $80 worth of goods or services and passing a forged check for $28.36, and current of-

fense was using false pretenses to obtain around $120); *see also Taylor*, 460 F.3d at 1098–1100 (holding that sentence of 25 years to life for possessing 0.036 grams of cocaine base was not unconstitutional).

Accordingly, the Court finds no need to continue with "a comparative analysis between petitioner's sentence and sentences imposed for other crimes in [California] and sentences imposed for the same crime in other jurisdictions." *Harmelin*, 501 U.S. at 1004, 111 S.Ct. 2680; *see also Ramirez*, 365 F.3d at 770 (comparative analysis appropriate only in the "extremely rare case that gives rise to an inference of gross disproportionality"). The California Court of Appeal's decision was not contrary to, or an unreasonable application of, Supreme Court precedent. 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 411–12, 120 S.Ct. 1495. Petitioner is not entitled to habeas relief on Ground One.

**GROUND TWO: PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL BECAUSE COUNSEL FAILED TO ARGUE THAT CALIFORNIA'S THREE STRIKES LAW DENIED PETITIONER EQUAL PROTECTION.**

**GROUND THREE: PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL BECAUSE COUNSEL FAILED TO ARGUE THAT THE USE OF PETITIONER'S PRIOR CONVICTIONS TO INCREASE HIS SENTENCE VIOLATED THE EX POST FACTO CLAUSE.**

**GROUND FOUR: PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL BECAUSE COUNSEL FAILED TO ARGUE THAT THE USE OF PETITIONER'S PRIOR CONVICTIONS TO INCREASE HIS SENTENCE VI-**

**OLATED THE DOUBLE JEOPARDY CLAUSE.**

In Grounds Two, Three, and Four, petitioner faults his appellate counsel for failing to raise the following arguments on appeal: (1) the Three Strikes law denied petitioner equal protection; (2) the use of prior convictions to increase petitioner's sentence violated the Ex Post Facto Clause; and (3) the use of the prior convictions violated the Double Jeopardy Clause.

**1. Federal Law Regarding the Effective Assistance of Appellate Counsel**

The right to the effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. *Evitts v. Lucey*, 469 U.S. 387, 396–97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Claims alleging ineffective assistance of appellate counsel are reviewed according to the two-part test outlined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir.1989); *see also Morrison v. Estelle*, 981 F.2d 425, 427 (9th Cir.1992) (finding the standard for assessing the performance of trial and appellate counsel is essentially the same under *Strickland*). Under the *Strickland* framework, petitioner must demonstrate the following to prevail: (1) that appellate counsel's performance was so deficient that it fell below an objective standard of reasonableness under prevailing professional norms; and (2) that petitioner suffered prejudice in that a reasonable probability exists that, but for appellate counsel's unprofessional errors, he would have prevailed on appeal. *Strickland*, 466 U.S. at 687–88, 694, 104 S.Ct. 2052. With respect to the second prong, a "reasonable probability" is "a probability sufficient to undermine

confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

It is not required, however, that appellate counsel raise every colorable or non-frivolous claim; effective appellate advocacy involves weeding out weaker claims in order to focus on stronger ones. *Jones v. Barnes,* 463 U.S. 745, 751–54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Miller,* 882 F.2d at 1434. Because petitioner must prove both deficient performance and prejudice, this Court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by [petitioner] as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052.

## 2. The Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *See City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Fraley v. Bureau of Prisons,* 1 F.3d 924, 926 (9th Cir.1993). Where a statutory challenge is based on equal protection grounds, the general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate government interest. *See City of Cleburne,* 473 U.S. at 440, 105 S.Ct. 3249; *Robinson v. Marshall,* 66 F.3d 249, 251 (9th Cir.1995); *United States v. Harding,* 971 F.2d 410, 412 (9th Cir.1992). A statutory sentencing scheme that does not disadvantage a suspect class or infringe upon the exercise of a fundamental right, as is the case here, is subject only to rational basis scrutiny. *See Harding,* 971 F.2d at 412. It can be disturbed only if

the petitioner can prove "that there exist no legitimate grounds to support the classification." *See id.* at 413 (citing *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981)).

As the California Court of Appeal explained in *People v. Kilborn,* 41 Cal. App.4th 1325, 49 Cal.Rptr.2d 152 (Cal.App. 2 Dist.1996), the purpose of the Three Strikes law is "to ensure that persons who are convicted of a felony after having been previously convicted of one or more serious or violent felonies, will receive a longer sentence and greater punishment than otherwise would be imposed." The *Kilborn* court further explained that punishing and discouraging recidivism is a "legitimate public objective" in that "those who have not drawn the proper lesson from a previous conviction and punishment should be punished more severely when they commit further crime." The Court added that singling out for greater punishment those who have committed serious or violent felonies in the past from other recidivists is "rationally related" to discouraging recidivism because "if a person has committed a felony so egregious as to merit the legislative classification as serious or violent, the public has a heightened interest in seeing to it that person commits no more felonies of *any* kind or degree." *See Kilborn,* 41 Cal.App.4th at 1328–32, 49 Cal.Rptr.2d 152 (emphasis in original); *see also Fausto v. Hickman,* 2003 WL 21439215, *3–*4 (N.D.Cal. June 9, 2003) (rejecting same equal protection claim based on *Kilborn* rationale). For these reasons, to the extent petitioner asserts a statutory challenge to the Three Strikes law, his equal protection claim fails.

Petitioner also claims that his equal protection rights were violated because the Three Strikes law is not applied evenhandedly across counties in California. (Peti-

tion Mem. at 29–31). To establish a such a violation, petitioner must show both that he was similarly situated to others who received preferential treatment, *Cleburne*, 473 U.S. at 439, 105 S.Ct. 3249, and a discriminatory motive or intent for that different treatment. *McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir.1999); *Thomas v. Borg*, 159 F.3d 1147, 1150 (9th Cir. 1998). Petitioner has made no showing of unequal treatment or of a discriminatory motive or intent underlying his prosecution and/or sentence. In any event, prosecutors have broad discretion to determine whether to prosecute and what charges to bring. *United States v. Kidder*, 869 F.2d 1328, 1335 (9th Cir.1989). Even assuming some selectivity in the prosecutorial decision to charge "strike" enhancements, to make out an equal protection challenge petitioner must still show that a discriminatory purpose was behind the decision. *Id.* at 1335–36. Petitioner suggests no impermissible ground or motive for the prosecutor's decision to prosecute petitioner as a "third-striker."

Because petitioner's underlying equal protection claim has no merit, it follows that petitioner cannot demonstrate deficient performance on the part of his appellate attorney for not raising such a claim on appeal. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996) (counsel's failure to take futile action is not deficient performance); *United States v. Moore*, 921 F.2d 207, 210 (9th Cir.1990) (a lawyer is not ineffective for failing to make a meritless motion); *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir.1985) ("Failure to raise a meritless argument does not constitute ineffective assistance."). Moreover, even if the equal protection argument had been raised on appeal, there is no reasonable probability that the state appellate court would have ruled in petitioner's favor. Thus, petitioner cannot establish prejudice

within the meaning of *Strickland*. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

### 3. The Ex Post Facto Claim

█ The United States Supreme Court repeatedly has upheld statutes that punish recidivists more severely than first offenders against ex post facto challenges. *See, e.g., Parke v. Raley*, 506 U.S. 20, 26–27, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992); *Spencer v. Texas*, 385 U.S. 554, 560, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). The Court's rationale for doing so is that "a charge under a recidivism statute does not state a separate offense, but goes to punishment only." *Parke*, 506 U.S. at 27, 113 S.Ct. 517. As the Supreme Court stated in *McDonald v. Massachusetts*, 180 U.S. 311, 312, 21 S.Ct. 389, 45 L.Ed. 542 (1901), "The punishment is for the new crime only, but is the heavier if he is an habitual criminal." Thus, the application of an enhancement due to a prior conviction is not a violation of the Ex Post Facto Clause because the enhancement is not a penalty for the prior offense; rather, it is the recidivist nature of the present offense that the enhancement punishes. *See McDonald*, 180 U.S. at 312–13, 21 S.Ct. 389.

█ For a statute to violate the ex post facto proscription, it must either (a) punish as a crime an act previously committed, which was innocent when done; (b) make more burdensome the punishment for a crime, after its commission; or (c) deprive one charged with a crime of any defense available according to law at the time when the act was committed. *See Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). Here, petitioner's sentence enhancement based on his prior felony convictions, pursuant to the amendments to California Penal Code § 667 which already were in effect at the time petitioner committed the current offense, did not violate any of the foregoing

principles. Accordingly, petitioner's appellate counsel was not deficient for not asserting an ex post facto challenge on appeal. Nor did petitioner suffer prejudice under *Strickland* by the omission of such a claim on appeal.

### 4. The Double Jeopardy Claim

 The Double Jeopardy Clause protects against successive prosecutions for the same offense after an acquittal or conviction, and against multiple punishments for the same offense. *Monge v. California,* 524 U.S. 721, 727–28, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998); *Witte v. United States,* 515 U.S. 389, 397, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351 (1995). The United States Supreme Court has held that the use of prior convictions to enhance sentences for subsequent convictions does not violate the Double Jeopardy Clause. As explained by the Court in Witte, "the enhanced punishment imposed for the later offense is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes," but instead as "a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *Witte,* 515 U.S. at 400, 115 S.Ct. 2199 (quoting *Gryger v. Burke,* 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948)).

Based on the above authority, petitioner's double jeopardy claim is without merit. In turn, his ineffective assistance claim necessarily fails because his appellate counsel was not deficient for failing to raise this claim on appeal, as it would have been futile to do so. *See Rupe,* 93 F.3d at 1445. Nor can petitioner establish prejudice under *Strickland,* because even if the double jeopardy claim had been included in his direct appeal, it would have been denied for lack of merit.

Pursuant to an independent review, the Court concludes that the state court's re-

jection of petitioner's claims of ineffective assistance of appellate counsel was not contrary to, or an unreasonable application of, Supreme Court precedent. *See Delgado,* 223 F.3d at 981–82. No habeas relief is warranted for Grounds Two, Three, or Four.

### GROUND FIVE: THE CUMULATIVE ERRORS VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS.

 In Ground Five, petitioner claims that the cumulative effect of the errors alleged in Grounds One through Four violated his right to a fair trial. (Petition at 57–59).

 The combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair. *Chambers v. Mississippi,* 410 U.S. 284, 298, 302–03, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (combined effect of individual errors "denied [Chambers] a trial in accord with traditional and fundamental standards of due process" and "deprived Chambers of a fair trial"); *see also Taylor v. Kentucky,* 436 U.S. 478, 487 n. 15, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978) ("[T]he cumulative effect of the potentially damaging circumstances of this case violated the due process guarantee of fundamental fairness...."). A cumulative error claim allows for habeas relief when, although no single error independently warrants reversal or rises to the level of a constitutional violation, the effect of multiple errors caused the litigant to suffer undue prejudice. *Chambers,* 410 U.S. at 290 n. 3, 93 S.Ct. 1038; *see also United States v. Frederick,* 78 F.3d 1370, 1381 (9th Cir.1996) ("Where ... there are a number of errors at trial, 'a balkanized, issue-by-issue harmless error review' is far less effective than analyzing the overall effect of all the errors" in the trial).

As recently explained by the Ninth Circuit:

> Under traditional due process principles, cumulative error warrants habeas relief only where the errors have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Such "infection" occurs where the combined effect of the errors had a "substantial and injurious effect or influence on the jury's verdict." In simpler terms, where the combined effect of individually harmless errors renders a criminal defense "far less persuasive than it might [otherwise] have been," the resulting conviction violates due process.

*Parle v. Runnels,* 505 F.3d 922, 927 (9th Cir.2007) (internal citations omitted).

As set forth *supra,* with respect to each contention raised by petitioner in Grounds One through Four, he has failed to establish that any single error occurred. It follows, therefore, that when considering all of petitioner's contentions of error in combination, his claim of cumulative error lacks merit. In short, petitioner cannot establish that his contentions of error, when viewed singly or cumulatively, deprived him of a fair trial. Pursuant to this independent review, the Court concludes that the state court's denial of this claim was not contrary to, or an unreasonable application of, any clearly established federal law as determined by the U.S. Supreme Court. *Delgado,* 223 F.3d at 981–82.

**GROUND SIX: PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL BECAUSE COUNSEL FAILED TO FILE A MOTION FOR DEFERRED ENTRY OF JUDGMENT UNDER CALIFORNIA PENAL CODE § 1000(A).**

**GROUND SEVEN: CALIFORNIA PENAL CODE § 1000(A) VIOLATES THE EQUAL PROTECTION CLAUSE.**

■ In Grounds Six and Seven, petitioner asserts claims based on California Penal Code § 1000(a), which concerns deferred entry of judgment for first-time drug offenders.[4] Specifically, petitioner contends that Section 1000(a) violates the Equal Protection Clause and that his trial counsel was ineffective for not filing a motion for deferred entry of judgment pursuant to the statute.

"The primary purpose of the [Section 1000(a) ] is rehabilitation." *People v. Bishop,* 11 Cal.App.4th 1125, 1130, 15 Cal. Rptr.2d 539 (Cal.App. 6 Dist.1992). As

---

**4.** Section 1000(a) of the California Penal Code states in relevant part:

(a) This chapter shall apply whenever a case is before any court upon an accusatory pleading for a violation of Section ... 11377 ... of the Health and Safety Code ... and it appears to the prosecuting attorney that ... all of the following apply to the defendant:

(1) The defendant has no conviction for any offense involving controlled substances prior to the alleged commission of the charged offense.

(2) The offense charged did not involve a crime of violence or threatened violence.

(3) There is no evidence of a violation relating to narcotics or restricted dangerous drugs other than a violation of the sections listed in this subdivision.

(4) The defendant's record does not indicate that probation or parole has ever been revoked without thereafter being completed.

(5) The defendant's record does not indicate that he or she has successfully completed or been terminated from diversion or deferred entry of judgment pursuant to this chapter within five years prior to the alleged commission of the charged offense.

(6) The defendant has no prior felony conviction within five years prior to the alleged commission of the charged offense.

explained by the California Court of Appeal, the diversion statute

> authorize[s] the courts to "divert" from the normal criminal process persons who are formally charged with first-time possession of drugs, have not yet gone to trial, and are found to be suitable for treatment and rehabilitation at the local level. The purpose of such legislation ... is two-fold. First, diversion permits the courts to identify the experimental or tentative user before he becomes deeply involved with drugs, to show him the error of his ways by prompt exposure to educational and counseling programs in his own community, and to restore him to productive citizenship without the lasting stigma of a criminal conviction. Second, reliance on this quick and inexpensive method of disposition, when appropriate, reduces the clogging of the criminal justice system by drug abuse prosecutions and thus enables the courts to devote their limited time and resources to cases requiring full criminal processing.

*People v. Ormiston,* 105 Cal.App.4th 676, 689, 129 Cal.Rptr.2d 567 (Cal.App. 1 Dist. 2003) (citations omitted).

Moreover, Section 1000(a) "leaves no room for weighing the effect of the facts: if for example the defendant has a prior narcotics conviction, subsection (1) of subdivision (a) of the statute automatically excludes him from the program. There is no provision here ... for the exercise of judicial discretion to admit an otherwise ineligible defendant to the program 'in the interests of justice'...." *In re Varnell,* 30 Cal.4th 1132, 1139, 135 Cal.Rptr.2d 619, 70 P.3d 1037 (2003) (citations and emphasis omitted).

Petitioner raised the ineffective assistance claim in his habeas petition filed in the Santa Barbara County Superior Court.

The superior court denied the claim as follows:

> Under the express terms of Section 1000(a)(1) and (4), petitioner was not eligible for deferred entry of judgment. First, petitioner had prior convictions in both 1987 and 1989 for violation of *Health & Safety Code* § 11550(a) [use/being under the influence of a controlled substance], which violates the Section 1000(a)(1) requirement that a defendant have no prior convictions involving controlled substances. Second, petitioner cannot show compliance with Section 1000(a)(4), which requires that his record not indicate that probation or parole has ever been revoked without thereafter being completed. Petitioner has had numerous parole violations dating back to 1973 (while still a juvenile), and including violations in 1982, 1986, 1988, and two in 1989, as well as a probation revocation in 1983. The four parole violations in the 1986 to 1989 time frame all related to parole releases from imprisonment for the same 1985 convictions. Further, [petitioner] was on parole at the time he committed the current offense for possession of methamphetamine.

> ... [T]o sustain a claim of ineffective assistance of counsel, a court must determine that the counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that there is a reasonable probability that but for the errors, the results of the proceeding would have been different. [Citation.] Because petitioner was ineligible for *Penal Code* § 1000 deferred entry of judgment, his attorney's failure to file a motion seeking such deferred entry of judgment did not fall below any standard of reasonableness under prevailing professional norms, and there is no reasonable prob-

ability that the results would have been different, had such a motion been filed. (Petition, Exh. A "Order on Petition for Writ of Habeas Corpus").

The trial court's finding that petitioner failed to establish deficient performance on the part of his trial counsel, as well as prejudice, was not an unreasonable application of *Strickland*.[5] Based on his prior drug offenses and parole violations, petitioner was statutorily ineligible for drug diversion. Accordingly, there was no basis for bringing a motion for deferred entry of judgment. Moreover, even if his trial counsel had filed such a motion, it would have been denied because of petitioner's ineligibility. Habeas relief is denied on Ground Six. 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 411–12, 120 S.Ct. 1495.

Petitioner's equal protection challenge raised in Ground Seven is likewise baseless. Petitioner did not qualify under Section 1000(a) because the statute only applies to first-time drug offenders. Accordingly, petitioner cannot demonstrate unequal treatment because he is not similarly situated to other first-time offenders who are eligible for deferred entry of judgment. Given his ineligibility under the terms of Section 1000(a), petitioner likewise cannot make a showing of a discriminatory motive or intent. The state court's rejection of this claim was not contrary to, or an unreasonable application of, Supreme Court precedent. *See Delgado*, 223 F.3d at 981–82.

## GROUND EIGHT: THE SENTENCING COURT ABUSED ITS DISCRETION IN FAILING TO STRIKE THE PRIOR CONVICTIONS.

In Ground Eight, petitioner asserts that the trial court abused its discretion in denying his request to strike his prior felony convictions for sentencing purposes. (Petition Mem. at 86–95).

In California, trial courts have the discretion to dismiss prior strikes in the interest of justice under California Penal Code § 1385(a). *People v. Superior Court (Romero)*, 13 Cal.4th 497, 529–30, 53 Cal. Rptr.2d 789, 917 P.2d 628 (1996). "[T]he court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the ... spirit [of the Three Strikes law], in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." *People v. Williams*, 17 Cal.4th 148, 161, 69 Cal.Rptr.2d 917, 948 P.2d 429 (1998).

In petitioner's case, the trial court denied petitioner's motion to strike the priors, and sentenced petitioner to thirty years to life in accordance with the Three Strikes statute. The California Court of Appeal upheld the sentence on appeal, finding that the trial court's decision was not an abuse of discretion. In its decision, the appellate court recited petitioner's lengthy criminal history, and found that petitioner's "demonstrated propensity for reoffending" was a valid basis for denying the motion to strike the priors. (Lodgment No. 3 at 5–6). The appellate court further stated:

---

5. Under *Strickland*, a petitioner must first prove that his trial attorney's representation fell below an objective standard of reasonableness by identifying the acts or omissions that rendered the representation objectively unreasonable. *Strickland*, 466 U.S. at 687–88, 690, 104 S.Ct. 2052. Second, the petitioner must show that he was prejudiced by his attorney's deficient performance. *Id.* at 692, 104 S.Ct. 2052.

We reject [petitioner's] contention that his drug addiction should be considered a motivating factor mandating the striking of his prior convictions.... [D]rug addiction is not necessarily regarded as a mitigating factor when a criminal defendant has a long-term problem and seems unwilling to pursue treatment. Here, even after serving numerous and lengthy prison sentences, [petitioner] continued to reoffend. The record shows that, since the age of 23, the longest time [petitioner] has gone without being rearrested after being released from custody was four months. He was on parole when the instant offense was committed. As the probation officer emphasized, his lengthy record of serious and violent felonies, and the rapidity with which he has re-offended after being released from custody, indicate that this individual is a serious danger to society.

(Lodgment No. 3 at 6) (internal citation and quotation marks omitted).

The Ninth Circuit has held that a challenge to the denial of a *Romero* request constitutes a state law claim that cannot be considered in a federal habeas petition. *Brown v. Mayle*, 283 F.3d 1019, 1040 (9th Cir.2002), *vacated on other grounds*, *Mayle v. Brown*, 538 U.S. 901, 123 S.Ct. 1509, 155 L.Ed.2d 220 (2003). Accordingly, petitioner's claim that the trial court improperly denied his request to strike the prior convictions is not subject to federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

To the extent petitioner's claim is reviewable based on the denial of due process of law, it lacks merit as petitioner has not shown that his sentencing was fundamentally unfair. *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir.1994) ("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief."). The record reflects that the trial court declined to exercise its discretion to strike any prior convictions based on petitioner's criminal record, which included numerous prior misdemeanor and felony convictions and numerous parole violations and periods of incarceration. Moreover, petitioner committed the current offense while still on parole. In light of these circumstances, the trial court's determination that petitioner fell within the spirit of the "Three Strikes" statute and its refusal to strike the prior convictions was not unreasonable. *See, e.g., People v. Barrera*, 70 Cal.App.4th 541, 554–55, 82 Cal.Rptr.2d 755 (Cal.App. 2 Dist.1999) (trial court did not abuse its discretion by refusing to strike one of defendant's prior convictions where the record established, *inter alia*, little effort at rehabilitation, and numerous probation and parole violations); *People v. Cline*, 60 Cal.App.4th 1327, 1336–37, 71 Cal.Rptr.2d 41 (Cal.App. 4 Dist.1998) (trial court did not abuse its discretion by refusing to strike one or more of defendant's prior convictions, where "[d]efendant's prior incarcerations [had] not succeeded in dissuading him from continuing to offend.").

The Court concludes that the California Court of Appeal's determination upholding petitioner's sentence was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d); *Williams,*

529 U.S. at 411–12, 120 S.Ct. 1495. Habeas relief is denied.[6]

## VI.

### *RECOMMENDATION*

It is recommended that the District Court issue an Order: (1) adopting this Final Report and Recommendation; and (2) directing that judgment be entered denying the Petition and dismissing this action with prejudice.

This Final Report and Recommendation is not intended for publication.

DATED: December 4, 2008

6. On July 30, 2008, petitioner filed Objections to the Report and Recommendation, which was issued on June 10, 2008. In the Objections, petitioner asserts that his lengthy sentence amounts to cruel and unusual punishment because "there is no connection between his current conviction of possession of a controlled substance and [his] prior theft related crimes." (Objections at 4–5). Petitioner's assertion is unavailing. Although petitioner's instant crime of possession of methamphetamine is a different type of offense than his four prior "strikes," which all involved convictions of first degree robbery with the use of a firearm, this does not negate the fact that he has a lengthy criminal history and has served numerous prior prison terms. As explained in more detail *supra*, his sentence, although lengthy, is not grossly disproportionate when taking into account his prior offenses. Moreover, with respect to his commitment offense and criminal history, his case is on par with numerous other cases in which sentences of similar length were upheld.

Petitioner also contends that he was eligible for the drug diversion program because his prior convictions that involved controlled substances were only misdemeanors. (Objections at 21). Under California Penal Code § 1000(a)(1), a defendant is ineligible for drug diversion if he or she has any conviction "for any offense involving controlled substances prior to the alleged commission of the charged offense." The statute makes no distinction between misdemeanor or felony convictions, or otherwise indicates that a prior misdemeanor conviction does not bar entry into the program. Thus, as explained in the R & R, and contrary to petitioner's assertion, because he had two prior controlled-substances convictions, he was statutorily ineligible for drug diversion.

On August 6, 2008, petitioner filed supplemental objections and a request for stay of the proceedings. In his supplemental objections, petitioner contends that respondent "failed to answer" numerous grounds for relief, and requests a stay to allow time for respondent to address the claims. (Supplemental Objections at 1). The Court finds that respondent has adequately addressed petitioner's claims. Accordingly, petitioner's objections are unavailing, and his request for a stay is **denied.**